**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ATAIN INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>*v.*<br><br>**BASEMENT WATERPROOFING SPECIALISTS, INC., d/b/a OLD FAMILY CONSTRUCTION,**<br><br>Defendant. | **CIVIL ACTION**<br><br>**NO. 20-5440-KSM** |

**MEMORANDUM**

**Marston, J.** **November 3, 2021**

Plaintiff Atain Insurance Company seeks a declaratory judgment that it does not owe a duty to defend or indemnify its insured, Defendant Basement Waterproofing Specialists, Inc. d/b/a Old Family Construction ("Basement, Inc."), in the underlying state court action arising out of injuries allegedly sustained by one of Basement, Inc.'s customers after Basement, Inc. installed a new French drain system in his home. (Doc. No. 1.) Basement, Inc. filed a declaratory judgment counterclaim, seeking the opposite: a declaration that Atain owes it a defense and indemnity. (Doc. No. 3 at pp. 15–17.)

Presently before the Court is Atain's motion for judgment on the pleadings (Doc. No. 11), and Basement, Inc.'s cross-motion. For the reasons that follow, the Court grants Atain's motion and denies Basement, Inc.'s motion.

## I. Background

The material facts of this case are undisputed.

### *A. The Budman Action*

Gary Budman—the plaintiff in the underlying state court action—owns a single-family home in New Jersey, and in March 2020, Budman hired Basement, Inc. to perform work on his property. (Doc. No. 1-5, Budman Compl. at ¶¶ 3–14; Doc. No. 1 at ¶¶ 12–17.) Before March 2020, the property had a French drain system, which "generally worked satisfactorily"; however, during heavy rainstorms, "minimal water would accumulate around one of the front walls, and water would enter the basement." (Budman Compl. at ¶¶ 4–5.) At the time, that front wall had a small crack in it and no bowing. (*Id.* at ¶ 6.)

Budman sought an opinion on how to remedy the issue. (*Id.* at ¶ 7.) On March 24, George Sowers, a Basement, Inc. representative, inspected the property, and advised Budman that a new French drain system would need to be installed "to ensure that water would no longer accumulate around one of the front walls or enter the basement during a rainstorm." (*Id.* at ¶¶ 10–11; Doc. No. 1 at ¶ 14.) Budman alleges that although the construction would affect the "structural foundation of the Property," Sowers represented that Basement, Inc. did not need to consult with an engineer. (Budman Compl. at ¶ 12.)

Budman and Basement, Inc. then entered into agreement pursuant to which Budman would pay Basement, Inc. $16,000 to install a French drain system, reinforce the wall with rebar, and repair the crack in the wall. (*Id.* at ¶ 13; Doc. No. 1-5, Ex. A at pp. 42–43.) Basement, Inc. began work on the property on March 26 and finished work around 5:00 p.m. on March 27. (Budman Compl. at ¶¶ 14–18.) Budman alleges that the workers confirmed that when the work was complete, there would be no further water issues. (*Id.* at ¶¶ 14–16.)

Later that evening, there was a rainstorm. (*Id.* at ¶ 19.) The next day, Budman and his wife inspected the property and discovered "flooding around the front wall as well as three other

walls." (*Id.* at ¶¶ 20–21.) "In addition, there was extensive fracturing and bowing on the front wall that [Basement, Inc.] represented it reinforced and repaired." (*Id.* at ¶ 21.)

Budman reached out to Basement, Inc., and Basement, Inc. sent an engineer, Wynfred Sibley, to investigate. (*Id.* at ¶¶ 22–23.) Sibley informed Budman "that a French drain system would not be sufficient to prevent the water issues affecting the Property, and that the work should have been performed on the outside of the Property." (*Id.* at ¶ 24.) Budman claims that Basement, Inc.'s owner would not allow him to review Sibley's report and believes that the property is now in danger of collapse. (*Id.* at ¶¶ 25, 27.)

On August 18, 2020, Budman filed the underlying action in state court against Basement, Inc., asserting claims for breach of contract (Count I), negligence (Count II), consumer fraud violations (Count III), common law fraud (Count IV), breach of the covenant of good faith and fair dealing (Count V), and a declaratory judgment (Count VI). (Doc. No. 1-5 at pp. 26–35.) Budman seeks damages in excess of $100,000. (*Id.* at p. 10.)

Basement, Inc. demanded that Atain, its insurer, provide it with coverage for the Budman action. (Doc. No. 1 at ¶ 3.) Atain denied Basement, Inc.'s claim on October 30, 2020. (*Id.* at ¶ 34; Doc. No. 1-4, Ex. 3 at pp. 2–8 (Oct. 30, 2020 Ltr. from C. Tellner to K. Klinger).)

***B. The Policy***

At the time of the underlying incident in March 2020, Basement, Inc. had an active insurance policy with Atain. (*See* Doc. No. 1 at ¶ 2 ("Atain issued Basement Inc. an insurance policy . . . for the policy period of August 5, 2019 to August 5, 2020."); Doc. No. 1-3 (the policy).) The Commercial General Liability Coverage provision provides:

> **SECTION I – COVERAGES**
>
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .

(Doc. No. 1-3 at p. 52.)

In turn, Section V of the policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at p. 66.)

***C. Procedural History***

On October 30, 2020, Atain filed this lawsuit seeking a declaration that it is not required to defend or indemnify Basement, Inc. against Budman's claims in the underlying state court action. (Doc. No. 1.) Basement, Inc. filed its answer and a counterclaim, seeking a declaratory judgment that Atain owes it a defense and indemnity, on December 8, 2020. (Doc. No. 3.) Subsequently, Atain filed the instant motion for judgment on the pleadings (Doc. No. 11), Basement, Inc. filed a response brief and cross-motion (Doc. No. 12), and Atain filed a reply (Doc. No. 13).

## II. Legal Standards

### *A. Judgment on the Pleadings*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)). A dispute of fact is material if there is sufficient evidence for a reasonable factfinder to find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1] When determining whether the moving party is entitled to judgment as a matter of law, the Court must view the facts in the light most favorable to the non-moving party. *Rosenau*, 539 F.3d at 221; *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986). "In deciding a motion for judgment on the pleadings, a court may consider 'the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiff's claims are based on the documents, and matters of public record.'" *Burlington Ins. Co.*, 484 F. Supp. 3d at 240 (quoting *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).

"The interpretation of an insurance contract is a question of law." *Atain Ins. Co. v. E. Coast Business Fire, Inc.*, Civil Action No. 17-2545, 2018 WL 637579, at *1 (E.D. Pa. Jan. 31, 2018) (citing *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011)). "Whether a claim

---

[1] Although *Anderson* defined materiality in the context of a motion for summary judgment, courts have applied this definition when reviewing a motion for judgment on the pleadings. *See, e.g.*, *Burlington Ins. Co. v. Shelter Structures, Inc.*, 484 F. Supp. 3d 237, 240 & n.17 (E.D. Pa. 2020).

is within a policy's coverage or is barred by an exclusion may be determined on a motion for judgment on the pleadings." *Id.*

***B. Contract Interpretation***

Under Pennsylvania law, "[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement." *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (alteration in original) (quoting *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Commw. Ct. 2005)); *see also Pa. Env't Def. Found. v. Pennsylvania*, 255 A.3d 289, 304 (Pa. 2021). Courts applying Pennsylvania law are required to give effect to a contract's clear and unambiguous language. *401 Fourth Street, Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005); *see also Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020). A contract's terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999); *see also Atain*, 2018 WL 637579, at *2 ("Contract language is ambiguous if it is reasonably capable of more than one meaning."). However, courts must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity," and must give effect to a contract's clear and unambiguous terms. *Madison Constr. Co.*, 735 A.2d at 106.

***C. The Duty to Defend and Indemnify***

An insurer's "duty to defend is distinct from its duty to provide coverage. It is interpreted more broadly than the duty to indemnify." *Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F. Supp. 2d 339, 344 (E.D. Pa. 2011) (citations omitted). The duty to defend is triggered whenever the factual allegations in the complaint "may *potentially* come within the coverage of the policy." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243,

250 (3d Cir. 2019) (emphasis added) (cleaned up); *see also Sabia Landscaping v. Merchants Mut. Ins. Co.*, Civil Action No. 13-3820, 2013 WL 6022129, at *2 (E.D. Pa. Nov. 6, 2013); *Atain Ins. Co.*, 2018 WL 637579, at *2 (explaining that as long as this is requirement is met, the insurer is obligated to defend the insured "even if the suit is groundless, false, or fraudulent" (cleaned up)). Given the broad scope of the duty to defend, courts construe the complaint in the underlying action liberally, accepting the factual allegations as true and resolving all doubts as to coverage in favor of the insured. *Atain*, 2018 WL 637579, at *2. And "[i]f a single claim in a multiple-claim complaint is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim." *Id.* (citation omitted).

On the other hand, the duty to indemnify "is not necessarily limited to the factual allegations of the underlying complaint"; instead, "there must be a determination that the insurer's policy *actually* covers a claimed incident." *Sapa Extrusions, Inc.*, 939 F.3d at 250 (cleaned up); *see also Atain*, 2018 WL 637579, at *2 ("A duty to indemnify does not arise until the insured is found liable for a covered claim."). Thus, there can be a duty to defend but no duty to indemnify.

## III. Discussion

Atain argues that it is entitled to judgment on the pleadings and has no obligation to defend or indemnify Basement, Inc. because the damage to the Budman property is not an "occurrence" within the meaning of the policy.

Under the Commercial General Liability Policy, Atain "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. No. 1-3 at p. 52.) But insurance coverage only applies to "'bodily injury' or 'property damage' . . . caused by an 'occurrence,'" which is defined

as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at pp. 52, 66.) The policy does not define "accident." (*See generally id.*) As the Pennsylvania Supreme Court has explained, however, "[w]ords of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense," and "[t]he key term in the ordinary definition of 'accident' is 'unexpected,'" which "implies a degree of fortuity." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897–98 (Pa. 2006) (noting that Webster's Dictionary defined "accident" as "'an unexpected and undesirable event,' or 'something that occurs unexpectedly or unintentionally'").

Bearing these definitions in mind, we now turn to the causes of action asserted in the underlying complaint and consider whether the allegations qualify as an "occurrence." *See Utica Mut. Ins. Co. v. Voegele Mech., Inc.*, 418 F. Supp. 3d 78, 91 (E.D. Pa. 2019) ("[I]t is well-settled law in Pennsylvania that it is the nature of the allegations themselves, not the particular cause of action that is pled in the complaint that determines whether coverage has been triggered.").

First, Budman brings a breach of contract claim against Basement, Inc. (Budman Compl. at pp. 6–7 (Count I).) "Breach of contract claims are not covered under commercial general liability insurance policies. General liability policies are intended to protect insureds from accidental injuries, not damages arising out of contractual disputes." *Atain*, 2018 WL 637579, at *3 (citations omitted) ("Count I of the underlying complaint asserts a cause of action against [the insured] for breach of contract. Because those allegations arise out of [the insured's] contractual obligations, they are not a covered 'occurrence.'"); *see also Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 238 (3d Cir. 2010) (holding that the insurer did not have a duty to defend the insured because the underlying plaintiff alleged only a breach of contract and "a breach of contract claim could not constitute an 'occurrence' in a commercial generally liability

policy under Pennsylvania law."); *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 694 (E.D. Pa. 2012) ("Pennsylvania law holds that a general liability policy protects against 'essentially accidental injury,' and not merely contractual disputes."); *Tower Ins. Co. v. Dockside Assocs. Pier 30 LP*, 834 F. Supp. 2d 257, 263 (E.D. Pa. 2011) ("A claim arising from a breach of contract is not covered under a general liability policy because it is not considered an 'occurrence.'"). In addition, for the reasons discussed below, the Court finds that the breach of contract claim is not an occurrence given that the allegations are grounded in faulty workmanship. Accordingly, the breach of contract claim is not covered by the policy.

Second, Budman brings a negligence claim against Basement, Inc. (Budman Compl. at p. 7 (Count II).) Budman alleges that Basement, Inc. had a duty to provide its professional services—which included installing a French drain system, repairing the crack in the front wall, and reinforcing the wall with rebar—within a certain standard of care, and that Basement, Inc. deviated from that standard, resulting in damages to the property, including flooding and extensive fracturing and bowing of the front wall. (*See id.* at ¶¶ 13, 21, 26, 33–36.) Although Count II is framed as a negligence claim, the allegations sound in contract, as Budman essentially alleges that Basement, Inc. failed to provide the services that it had contracted to provide (namely, failure to properly install the French drain system, repair the crack in the wall, and reinforce the wall). *See Atain Ins. Co.*, 2018 WL 637579, at *3 ("In count II of the underlying complaint, designated as a claim for negligence, the plaintiffs allege that East Cost failed to properly install, inspect, service, and maintain the fire suppression system and smoke detectors—work they had entered into a contract to perform . . . . These allegations for faulty workmanship are grounded in contract.").

In addition, Atain argues that Budman's assertion that Basement, Inc. acted negligently

when professionally servicing his home boils down to a claim for faulty workmanship, which does not constitute an occurrence. We agree.

In the seminal decision, *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, the Pennsylvania Supreme Court held that "the definition of 'accident' required to establish an 'occurrence' . . . cannot be satisfied by claims based upon faulty workmanship." 908 A.2d at 899 ("Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident.'"). Since then, "courts have consistently held that claims based upon faulty workmanship do not amount to an 'occurrence' that triggers an insurer's duty to defend." *Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 358–59 (E.D. Pa. 2017) (collecting cases); *see, e.g.*, *Sapa Extrusions, Inc.*, 939 F.3d at 256–57 (holding that the underlying plaintiff's allegations did not amount to an occurrence that would trigger coverage because "at bottom, the Complaint alleged faulty workmanship"); *Atain Ins. Co.*, 2018 WL 637579, at *4 ("In essence, the claims in Counts II, III, and IV are for faulty workmanship and breach of contract . . . Claims of faulty workmanship do not arise from an accident. Thus, they do not qualify as an 'occurrence' under a general liability policy.").

In *Specialty Surfaces International, Inc. v. Continental Casualty Co.*, the Third Circuit explained that under Pennsylvania law, "[i]n order for a claim to trigger coverage, there must be a causal nexus between the property damage and an 'occurrence,' i.e., a fortuitous event. Faulty workmanship, even when cast as a negligence claim, does not constitute such an event; nor do natural and foreseeable events like rainfall." 609 F.3d at 232; *see Quality Stone Veneer, Inc.*, 229 F. Supp. 3d at 361 (holding that the insurer had no duty to defend its insured because "all of the allegations [in the underlying complaint] are based upon [the insured's] alleged failure to

build the homes as required by [the insured's] private contractual arrangements, building codes, and zoning laws" and "merely allege faulty workmanship, which cannot constitute an occurrence under the CGL policy" and noting that "the fact that the underlying complaint included the word 'negligence'" did "not change the result"); *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, Civil Action No. 12-873, 2012 WL 895451, at *6 (E.D. Pa. Mar. 16, 2012) ("The defendants contend that an occurrence took place because the underlying complaint is based on claims of negligence in addition to breach of contract claims. Artful pleading will not change the result . . . Monmouth alleges in its underlying complaint that the faulty workmanship of RMS led to 'leakage and other water infiltrations' which in turn harmed [systems within the facility]. Water damage is a foreseeable result of faulty workmanship. This type of damage simply lacks the degree of fortuity for an occurrence to have taken place, even if couched in terms of negligence."); *see also Zurich Am. Ins. Co. v. Century Steel Erectors Co.*, Civil Action No. 19-998, 2020 WL 2065465, at *9 (W.D. Pa. Apr. 14, 2020) ("Century Steel is alleged to have improperly installed structural and architectural components of the parking garage . . . Simply put, Century Steel's workmanship is alleged to have been faulty and in breach of the subcontract. Thus, even under a liberal reading of the Complaint . . . , the factual allegations do not represent a fortuitous event, even when cast as negligence.").

In *Specialty Surfaces*, a school district hired a general contractor to install synthetic turf football fields and all-weather tracks at four of its schools. 609 F.3d at 227. The general contractor then hired Empire as a subcontractor to provide and install the fields and install drainage systems in the fields. *Id.* Empire was a subsidiary of Specialty Surfaces; together, the two did business as Sprinturf. *Id.* After the project was completed, the district filed suit, asserting breach of warranty and negligence claims, alleging that

> the synthetic turf systems installed . . . began to exhibit defects in materials and workmanship . . . All the fields have experienced failures of the subdrain system under the synthetic turf . . . As a direct result, water has leaked from the subdrain system into the subgrade, dirt has washed from the subgrade into the subdrain system, and the subgrade has settled and the soil stabilizer has remulsified. Consequently, the fields have developed depressions and unstable playing surfaces, and the fields fail to drain properly under the synthetic turf.

*Id.* at 227–28.

On appeal, the Third Circuit considered whether the insurer, Continental, owed Sprinturf a duty to defend it. *Id.* at 227. The Third Circuit concluded that it did not because the allegations in the underlying complaint—namely, that Empire "was negligent in designing, manufacturing and installing a suitable and compatible subdrain system and impermeable liner in compliance to the contract documents"—did "not support a determination that any damage was caused by an 'occurrence.'" *Id.* at 238. The Third Circuit explained: "Any damages to Empire's own work product based on Empire's alleged negligence are claims of damage based on faulty workmanship. Because they are not caused by an accident . . . they are not a covered 'occurrence' under the insurance policy." *Id.*

In addition, the Third Circuit rejected Sprinturf's argument that the damage to the subgrade—which was prepared by the general contractor and therefore was not Sprinturf's own work product—was accidental and, as such, amounted to a covered occurrence. *Id.* at 238–39. The court noted that the school district alleged that Empire installed the subdrain system, the impermeable liner, and the synthetic turf and that "as a direct result of the problems with the subdrain system," water leaked into the subgrade, among other things. *Id.* at 239. "Thus, the amended complaint alleges that the damage to the subgrade was caused by water leaks that resulted from faulty workmanship." *Id.* The Third Circuit held the damage to the subgrade did not constitute an occurrence, reasoning that "[w]ater damage to the subgrade is an entirely foreseeable, if not predictable, result of the failure to supply a 'suitable' impermeable liner or

properly install the drainage system." *Id.*; *see also Lenick Constr., Inc. v. Selective Way Ins. Co.*, 737 F. App'x 92, 95 (3d Cir. 2018) (rejecting the insured's argument that there was a covered occurrence because the "various complaints identify leaks, water infiltration, and cracked drywall, which were unrelated to [the insured's] work" and emphasizing that "damages that are a reasonably foreseeable result of the faulty workmanship are not covered, *even when such damage occurs to areas outside the work provided by the insured*" (cleaned up) (emphasis added)); *Berkley Specialty Ins. Co. v. Masterforce Constr. Corp.*, 515. F. Supp. 3d 285, 296–97 (M.D. Pa. 2021) ("[T]his matter falls squarely within the category of damages that are not covered by insurance contracts . . . . Similar to *Specialty Surfaces*, . . . here water leakage that damaged wood below the roof [i.e., damage to third-party property] was an entirely foreseeable result of the failure to properly cover or install the roof."); *Zurich*, 2020 WL 2065465, at *10 (holding that there was no "occurrence" under the policy because "[i]t is reasonably foreseeable that faulty workmanship on structural concrete could result in a partial collapse of the [parking] garage").

Likewise, in this case, a close review of Budman's allegations shows that he is essentially asserting claims for Basement, Inc.'s faulty workmanship. (*See, e.g.*, Budman Compl. at ¶ 21 ("[T]here was extensive fracturing and bowing on the front wall that defendant represented it reinforced and repaired."); ¶ 26 ("As a result of the actions and inactions of defendant, the Property has a non-functioning drainage system, increased water problems, resulting in structural issues including fracturing and bowing of the front wall.").) The allegations in the underlying complaint—namely, that Basement, Inc. was negligent in its assessment of what type of work needed to be completed and in installing the French drain system, repairing the crack in the wall, and reinforcing the wall—do "not support a determination that any damage was caused by an

'occurrence.'" *Specialty Surfaces*, 609 F.3d at 238. "Any damages to [Basement, Inc.'s] own work product based on [Basement, Inc.'s] alleged negligence are claims of damage based on faulty workmanship." *Id.* Thus, they were not caused by an "accident" and are foreclosed from constituting an "occurrence" under Basement, Inc.'s insurance policy with Atain.

In its response brief, Basement, Inc. argues that this case is distinguishable from *Specialty Surfaces* and other faulty workmanship cases because the damages went beyond the work that Basement, Inc. completed. (*See, e.g.*, Doc. No. 12 at p. 4 ("According to the Complaint, the next morning there was structural damage to all four walls in the basement, including three walls which Basement Waterproofing Specialists never touched and had no interaction with . . . The Complaint attempts to paint this as a workmanship issue, but the damages which occurred had nothing to do with the work Defendant completed."); *id.* at p. 6 ("[*Specialty Surfaces*] stands in stark contrast to the instant case, where the work done did not involve the property now claimed to have been damaged[.]").) Basement, Inc. thus attempts to isolate or partition off the pieces of property it touched (i.e., its own work product) from the remainder of the property affected. But in so arguing, Basement, Inc. glosses over the teachings of *Specialty Surfaces* and *Kvaerner*—it is of no moment whether the damage occurred to the insured's own work product or to other property; what matters is whether the damage to the other property was a foreseeable result of its work.

Here, Budman alleges that Basement, Inc. assessed the property and determined that installing a French drain system, repairing the crack in one of the front walls, and reinforcing that wall would alleviate the water issues. (Doc. No. 1-5 at ¶¶ 10–13.) Budman also alleges that the work would affect the property's foundation. (*Id.* at ¶ 12.) Further, Budman alleges that as a result of Basement, Inc.'s "inactions and actions," the property has a nonfunctioning draining

system and increased water problems, resulting in structural issues to the property, including the fracturing and bowing of the front wall. (*Id.* at ¶ 26.) A foreseeable consequence[2] of failure to properly install the French drain system and repair and reinforce the wall is increased water issues, and a foreseeable consequence of increased water issues is structural damage to the property.[3] Accordingly, Count II is not a covered occurrence under the policy.

Next, in Counts III and IV, Budman asserts statutory and common law fraud claims. (Budman Compl. at pp. 7–10.) Because fraud is an intentional act, these claims are also not covered occurrences. *See Tower Ins. Co.*, 834 F. Supp. 2d at 263 ("These counts state causes of action involving fraudulent conduct . . . Intentional acts, in contrast to accidents, are not covered 'occurrences' under a general liability policy. Thus, these claims, which are based upon

[2] Budman also alleged that the engineer Basement, Inc. sent to the property after the rainstorm advised him that "a French drain system would not be sufficient to prevent the water issues affecting the Property, and that the work should have been performed on the outside of the Property." (Budman Compl. at ¶ 24.) However, this goes to Basement, Inc.'s failure to properly assess the property or consult with an engineer before it began work and the flooding and other issues that arose are a foreseeable consequence of that failure. (*See id.* at ¶¶ 10, 12 ("Defendant's representative, George Sowers, inspected the Property on March 24, 2020 . . . Though the structural foundation of the Property would be affected during this construction, Mr. Sowers stated that the defendant did not need to consult with an engineer.").)

[3] Basement, Inc. cites a 2019 Pennsylvania Superior Court decision, *Pennsylvania Manufacturers Indemnity Co. v. Pottstown Industrial Complex LP*, to support its position that the incident at issue is a covered occurrence under the policy. This Court is not persuaded.

First, *Pennsylvania Manufacturers* is distinguishable. There, a commercial landlord was obligated under the terms of the lease to keep the roof "in serviceable condition and repair," and after a storm, the roof leaked and the floods ruined the tenant's merchandise. 215 A.3d 1010, 1012 (Pa. 2019). The Pennsylvania Superior Court held that the trial court erred in extending *Kvaerner's* faulty workmanship analysis to the tenant's claims against the landlord. *Id.* at 1014. The court explained, "[T]he Underlying Action alleges damage to other property, [the tenant's] inventory stored on the premises, caused by a distinct event, flooding, and seeks damages for destruction of that property, not for the cost of repairing or replacing the defective item that Insured supplied, the inadequate roof." *Id.* at 1017. This is not what happened here.

Second, even if *Pennsylvania Manufacturers* was factually analogous, this Court is not bound by the decisions of the Pennsylvania Superior Court and finds other Pennsylvania and Third Circuit precedent more availing. *See Berkley*, 515 F. Supp. 3d at 294.

intentional rather than accidental acts, are not covered by the insurance policy."); *Bituminous Cas. Corp. v. John W. Gleim, Jr., Inc.*, Civil Action No. 1:07-CV-2287, 2009 WL 473034, at *4 (M.D. Pa. Feb. 24, 2009) (holding that intentional acts, including fraud, were not covered by the policy and noting that "both Pennsylvania state courts and federal courts applying Pennsylvania law have held that intentional acts, including intentional misrepresentations, are not covered as 'occurrences' under a general liability insurance policy"); *USAA Cas. Ins. Co. v. Bateman*, Civil Action No. 2:07-cv-3700, 2008 WL 4761718, at *1, *7 (E.D. Pa. Oct. 30, 2008) (holding that the insurer had no duty to defend or indemnify the insured in underlying action where the plaintiff sued the insured for fraudulent and/or intentional misrepresentation, among other things, and noting that "[w]hile the Underlying Plaintiffs have alleged both intentional acts and a negligent misrepresentation, courts have repeatedly held that these acts are outside the scope of an 'accident'"); *State Farm Fire & Cas. Co. v. Czop*, No. Civ.A. 02-1048, 2004 WL 632724, at *7 (E.D. Pa. Feb. 11, 2004) ("[The underlying plaintiff's] allegations of [the insured's] fraudulent behavior . . . could not constitute an accident or occurrence under the policy such that coverage would be triggered. Accusing [the insured] of fraudulent behavior correspondingly imports a requirement of intentional action into the claim . . . [T]he policies at issue reserve coverage only for occurrences or accidents, thus foreclosing any recovery for intentional actions.").

Last, Budman's breach of the covenant of good faith and fair dealing claim (Count V) is based on Basement, Inc.'s breach of its contract with Budman and therefore is not covered for the same reasons discussed above.[4] (*See* Doc. No. 1-5 at ¶¶ 54–57.)

---

[4] Under Pennsylvania law, breach of the implied covenant of good faith and fair dealing is not an independent cause of action from breach of contract. *See Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 430 (E.D. Pa. 2015) ("[The duty of good faith and fair dealing] does not give rise to a separate cause of action separate and apart from a breach of contract cause of action. Thus, in Pennsylvania, a claim predicated on a breach of the covenant of good faith is 'subsumed in a breach of contract claim.'").

For these reasons, the Court holds that none of the allegations in the underlying complaint trigger coverage under the insurance policy and Atain does not owe Basement, Inc. a defense. And because we find that there is no duty to defend, there necessarily can be no duty to indemnify. *See Quality Stone Veneer, Inc.*, 229 F. Supp. 3d at 355 n.5 ("Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." (cleaned up)).

Because we find that Budman's allegations do not amount to an "occurrence," we need not consider Atain's arguments that even if there was an occurrence, several different policy exclusions bar coverage.

## IV. Conclusion

For the foregoing reasons, the Court grants Atain's motion for judgment on the pleadings and holds that Atain does not owe Basement, Inc. a duty to defend or a duty of indemnification. The Court denies Basement, Inc.'s cross-motion.

An appropriate order follows.